### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| STEPHEN G. BURKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:11-cv-00180-KOB-JEO |
| | ) |
| T. BOWNS, W. TIDWELL, *et al.*, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF OPINION

The magistrate judge filed a report and recommendation on July 9, 2014, recommending that the defendants' motion for summary judgment be granted and this cause be dismissed with prejudice. (Doc. 50). On August 20, 2014, the plaintiff filed thirty-two pages of objections (doc. 54), as well as a motion to amend his previously filed response to the special report (doc. 55).

The plaintiff first complains that the discovery process was patently unfair and one-sided. (Doc. 54 at 2). He complains that when his first request for production of documents, filed before the defendants had submitted their special report, was denied (see doc. 20) the court's statement that "the parties were specifically informed that there would be no additional discovery allowed without express leave of the court" meant to him that he would be informed when he could resubmit his request, and should not request discovery until he was so informed. (*Id.*) The plaintiff states

that he was "never again given, or informed of an opportunity to request discovery items." (*Id*.)  Review of the magistrate judge's order reveals that this argument is frivolous; in addition to informing the parties that no additional discovery would be allowed without express leave of the court, the magistrate judge informed the parties *how* to obtain leave of court, instructing that "the moving party must file with the court a motion specifically identifying the nature of the discovery sought and the reason the initial disclosures provided hereinabove were inadequate to provide the information sought by the discovery." (Doc. 20 at 1).  Thus, the magistrate judge explained to the plaintiff the steps he should take if he believed he needed discovery; the plaintiff never took advantage of that process.

The plaintiff also complains that on April 22, 2014, the magistrate judge ordered the defendants to produce "certain discovery items"(see doc. 42) but the plaintiff was never made aware of what evidence was actually turned over.  (Doc. 54 at 2).  That order directed the defendants to produce any recordings made which depicted any events alleged in the initial complaint. (Doc. 42). The defendants filed a response stating that video recordings were obtained and would be produced. (Doc. 44).  Contemporaneously with that response, the defendants filed a motion for protective order (doc. 45), which the magistrate judge granted (doc. 46), and the DVD was filed under seal.  (Doc. 47).  Thereafter, the plaintiff filed a motion for

appointment of counsel, but never mentioned the video recordings, or sought leave of court to view them, either in that or by separate motion. (Doc. 48). The magistrate judge denied the motion to appoint counsel. (Doc. 49). The magistrate judge entered his report and recommendation on July 9, 2014, and gave the plaintiff fifteen days to file objections. (Doc. 50). The plaintiff sought additional time to file his objections (doc. 51), and was given until August 25, 2015 to do so. (Doc. 52). In his motion for an extension of time, the plaintiff never sought to view the video recordings. The plaintiff's argument now, that the court never permitted him to view the DVD lacks merit, given that he never sought leave of the court to do so.

    The plaintiff objects to the magistrate judge characterizing his unsworn response to the defendants' special report as an "unsworn response." (Doc. 54 at 4). The plaintiff filed a letter to the clerk of court on July 25, 2014, explaining that the sworn declaration accompanying his response to the special report, which he had attached as pages 78-83 of that document, had been separated from the response and he had intended that declaration to make his entire response a "sworn" document (doc. 53), and that he has also filed a motion to amend his response to reflect that he intended it to be submitted under oath. (Doc. 55). The plaintiff's objection is overruled, and his motion is due to be denied. The court notes the plaintiff filed a response to the special report totaling 98 pages. (See Docs. 39, 40). The response

was divided into a 77-page typed document accompanied by a hand written sworn "Declaration in Opposition to Defendants Motion for Summary Judgment," which the plaintiff argued created a genuine issue of material fact, "as explained in the brief submitted with this declaration." (Doc. 40 at 5). Moreover, the magistrate judge considered the relevant arguments presented in the plaintiff's reply brief.

To the extent that the plaintiff argues that "glaring discrepancies" exist between his recollection of the events and the summarization in the report of the depiction of the events on the videotape, having reviewed the DVD, the court finds the plaintiff's objections to be unpersuasive as any factual discrepancies are immaterial. The court will briefly address each objection, in turn.

**A.   Objections to Factual Findings**

The plaintiff first clarifies that the cell move was not a routine cell rotation, but rather a forced cell move, and explains why he refused to cuff up as ordered. (Doc. 54 at 5). The plaintiff explains he was going to be moved to another tier into a double cell, and believed that his life could be in danger because he would have been placed in a cell with another inmate who "may have had a desire to take his life." (Doc. 54 at 5). He further states that the administration enjoyed the "blood sport" of placing rival gang members or known enemies into the same cell and encouraging them to fight each other. (*Id.*) The plaintiff does not allege that he was scheduled to be

4

placed into a cell with a known enemy. The nature of the cell move is not relevant under the circumstances. Regardless of the plaintiff's rationale for not following a direct order to be handcuffed for the cell move, he does not dispute that he refused to follow the order, which necessitated the use of force by the defendants.

The plaintiff objects to the finding of the magistrate judge on page 8 of the Report that the evidence did not support the plaintiff's assertion that he was burned and temporarily blinded by the spraying of the chemical agents into his cell. (Doc. 54 at 6). The plaintiff asserts that two full cans were sprayed into his cell, in violation of the policy that states only three sprays of a two-second duration may be sprayed during a forced cell extraction. (*Id.*) The plaintiff also objects to the magistrate judge characterizing him as non-compliant when he failed to go to the door to submit to restraints after the spray was employed, arguing that laying on the bed with his arms out to his sides was as compliant as he could be after being subjected to the spray. (*Id.*) Even accepting as true plaintiff's allegations that the spray did burn his eyes, making him temporarily unable to see, and that more than three short bursts of the agent were sprayed into his cell, the use of the spray under these circumstances would still not constitute a constitutional violation.

Regarding the allegations related to the events of July 9, 2009, the plaintiff objects to the magistrate judge's statement on page 9 of the Report that he was

"walked" to the shower. (Doc. 54 at 6). He explains that he was carried there, "superman style," and his feet did not touch the ground. (*Id*.) The Report oes not state that the plaintiff himself walked to the shower following the incident. Whether the plaintiff was carried with his feet not touching the ground or was led there while on his feet is not material to the decision in this matter. In any event, review of the DVD reveals that the plaintiff was led, bent over and walking on his own power with his feet touching the floor, from his cell to the shower. (Doc. 47, DVD of 7.8.09 at 14:15-15:30).

The plaintiff further objects to the statement on page 10 in the Report that Nurse Practitioner Paco found no evidence of injury, and argues that medical records prove Paco had been untruthful. (Doc. 54 at 7). The evidence to which the plaintiff refers shows that the day after the incident, the plaintiff complained to RN Bradley Cook that gas was still on his skin and clothes, which burned him, and that the plaintiff wanted to document an abrasion above his right eye, which Cook noted to be superficial. (Doc. 32, Ex. 21 at 9). Evidence also shows that on July 15, 2009, the plaintiff complained to PA Marisigan that he had a rash all over his body, stated his face hit the cement during a forced cell move, and asked for an ex-ray of his cheek bone and to document his injuries for "future court litigation." (Doc. 32, Ex. 21 at 15). PA Marisigan noted a rash on the plaintiff's body, mild tenderness to the right

side of his face, and prescribed an injection and cream for the rash.  (*Id.* at 15-16).  The fact that the plaintiff later developed a rash and had a superficial scrape on his cheekbone does not establish Nurse Paco lied when he documented no injuries on the date of the incident, nor does it establish that excessive force was used against the plaintiff.

      The plaintiff objects to the magistrate judge's statement that he failed to refute that he received proper medical care or three meals a day, and argues the record shows that he was not given proper medical care and that he was given non-kosher meals that he refused to eat.  (Doc. 54 at 7).  Both arguments have no bearing on the final disposition of this case.  The court finds that the record establishes that the plaintiff did receive adequate medical care.  The plaintiff's argument that he was served non-kosher food is unrelated to either of the three claims pending in this action.  He never raised this claim in his original or amended complaint.  Although in later pleadings the plaintiff stated that he had been put on an illegal sack diet, and submitted within the 40 pages of past grievances he filed with the intent to "exhaust for Bivens action," copies of grievances complaining that his tuna, sardines, and tomato juice were served in open containers in violation of kosher directives and he was served non-kosher sack lunches (see doc. 39 at 35-75), he never raised this issue as a discrete claim in his Complaint in this action.

The plaintiff objects to the magistrate judge concluding that he was given a decontamination shower after the incident, and with the report stating that the video showed no evidence of severe burns or of the plaintiff complaining about the same. (Doc. 54 at 7). The plaintiff, who initially asserted he was not permitted to shower, now concedes that he was placed in the shower, but argues he was clothed and under the water for only a short time. He also does not contradict the report's statement regarding his failure to complain of the burns immediately after the event, but explains that the burns did not occur immediately, but developed over time. (*Id.*) While the plaintiff contends the shower was not sufficient to have decontaminated his clothing, he was nonetheless given a shower. Regarding the "burns," the medical evidence shows that a rash developed on the plaintiff's body and that he was medically treated for that rash.

Regrading the September 22, 2009 incident, the plaintiff objects to the magistrate judge stating on page 12 of the Report that the plaintiff was being escorted by Humphrey and Mayer.[1] (Doc. 54 at 8-9). The plaintiff also objects to the finding that Officer Mayer helped Tidwell take the plaintiff to the ground, and reiterates his assertion that after the plaintiff sneezed on Tidwell, Tidwell slammed him to the floor

---

[1] The Report actually states that the plaintiff was being escorted by Tidwell and Mayer. (See Doc. 50 at 12). It does not mention Humphrey. *Id.*

while he was in full restraints and placed him in another illegal arm bar hold. (*Id.*) The plaintiff surmises that this incident was filmed by the tier camera in the area and should still be available to support his version of the events. (Doc. 54 at 9). Even accepting as true plaintiff's version of the events that he innocently sneezed on defendant Tidwell, who then took him to the ground and held his head immobile with no help from Mayer, it remains undisputed that Tidwell believed the plaintiff had spit on him and for that reason took him to the floor and held him there until additional staff arrived. Thus, the undersigned concurs with the magistrate judge's conclusion that the undisputed facts simply do not support the inference that Tidwell used force against the plaintiff in a wanton manner for the malicious and sadistic purpose of causing harm.

Regarding the incident of October 22, 2009, the plaintiff objects to the magistrate judge stating that the plaintiff threw a smoldering sheet or towel under the door. (Doc. 54 at 10). The plaintiff now does not deny throwing feces on two staff members or placing a pencil in the food slot lock to jam it, (see R&R doc. 50 at 13), but contends that the smoking item originated from a different cell. (Doc. 54 at 10). The plaintiff further states Tidwell emptied the contents of an entire fire extinguisher into his cell, and argues that cameras should have caught that on film for the court's consideration. (*Id.*) Tidwell testified that he sprayed the fire extinguisher at the fire

until it was extinguished. (Doc. 32, Ex. 13). Even assuming the plaintiff did not throw the burning item from his cell and that while attempting to extinguish the fire, Tidwell had sprayed the fire extinguisher into the plaintiff's cell, the court finds no Eighth Amendment violation. Regardless of how the fire began, Tidwell was justified in taking steps to extinguish it.

The plaintiff objects to the magistrate judge's finding on page 15 of the Report that a blanket was placed over him once he was placed in four point restraints. (Doc. 54 at 10). Review of the DVD supports the magistrate judge's finding. (Doc. 47, DVD of 10.22.09 at 9:30). Thus, the objection lacks merit.

**B.     Objections to Analysis and Conclusions**

In addition to the myriad of factual objections, the plaintiff objects to the conclusions reached by the magistrate judge. He again argues that the video evidence should support his contention that his Eighth Amendment rights were violated, complains that the defendants did not produce any video evidence taken from the tier cameras, continues to explain why he refused to comply with orders, and takes issue with being called a management problem.[2]  (Doc. 54 at 11-15).

---

[2] The plaintiff also object to mention of defendant Carter within the Report and Recommendation. (Doc. 54 at 15). It appears a typographical error occurred; the report inadvertently referred to defendant Clay as defendant Carter. (See Doc. 50 at 33-34). The plaintiff's objection is well taken, but immaterial to the resolution of this case, and, therefore, is overruled.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections filed by the plaintiff, and the DVD, the court finds that the magistrate judge's report is due to be and is hereby ADOPTED and his recommendation is ACCEPTED.

While immaterial factual discrepancies may well still remain, the court EXPRESSLY FINDS that no genuine issues of material fact exist and that the defendants are entitled to judgment as a matter of law.  Accordingly, defendants' motion for summary judgment is due to be GRANTED, and the court finds that summary judgment is due to be entered in favor of the defendants and against the plaintiff.  As such, the court will direct the Clerk to close the case.

To the extent the plaintiff objects to not being afforded the opportunity to view the DVD evidence in this case, the undersigned notes that the plaintiff never filed a motion seeking leave to do so, and moreover, that no prejudice resulted from him not viewing it.  To the extent the plaintiff complains that other video evidence must exist and, within the body of his objections, requests the court to issue a new discovery order seeking the same, his request is due to be DENIED.  For the reasons previously stated, the plaintiff's motion to amend his initial  response to the defendants' special report is also  DENIED.

A Final Judgment will be entered.

DONE and ORDERED this 29th day of September, 2014.

_____
  KARON OWEN BOWDRE
  CHIEF UNITED STATES DISTRICT JUDGE